# IN THE COURT OF APPEALS OF IOWA

No. 14-0090
Filed August 13, 2014

**MELONIE M. ANDERSON,**
    Respondent-Appellant,

**vs.**

**CARE INITIATIVES, INC. d/b/a WESTRIDGE
NURSING & REHAB CENTER,**
    Petitioner-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame

Ebinger, Judge.

A worker appeals the district court's decision that reversed the workers'

compensation decision awarding her benefits.   **DISTRICT COURT DECISION**

**REVERSED; AGENCY DECISION AFFIRMED.**

Robert E. Tucker of Tucker Law Office, Des Moines, for appellant.

Joseph D. Thornton of Smith Peterson Law Firm, L.L.P., Council Bluffs, for

appellee.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**VOGEL, J.**

Melonie Anderson appeals the district court's judicial review decision that reversed the workers' compensation award of benefits and remanded the case back to the agency. She claims on appeal the district court erroneously concluded there was a lack of evidence to support a determination of medical causation and the court applied the incorrect standard of review to the agency's decision. Because we find substantial evidence under the applicable standard of review to support the agency's decision finding medical causation for the injury, we reverse the decision of the district court and affirm the agency's award of benefits.

## I. Background Facts and Proceedings.

At the time of the workers' compensation hearing, Anderson was a forty-one-year-old, married, mother of three. She is a high school graduate and stayed at home to care for her children for a short time. Later she worked in the bakery at a local grocery store, worked at a motel, and worked in the kitchen at the hospital. She obtained a paid nutritional assistant certificate and completed training in modified diets and mandatory abuse reporting. While at the hospital, Anderson sustained an injury to her left shoulder and knee when she tripped on a phone cord. She was treated with arthroscopic surgery and received permanent work restrictions in October 2009 for her left shoulder to avoid repetitive lifting, reaching above her head, or working above her shoulder level.

In July 2010, Anderson was hired by Care Initiatives, d/b/a Westridge Nursing & Rehab Center, as a dietary manager and underwent a pre-employment physical. The report to the employer, completed about a month

before she began work, noted her work restrictions above but stated she was "medically qualified to do the essential functions of the job with limitations/accommodations." Approximately two days before Anderson started work with Care Initiatives, she saw a nurse practitioner with complaints of low back pain radiating into her thighs. Anderson stated she had been experiencing back pain for nine days after going on a trip for her birthday. She had awakened one morning in the hotel completely seized in pain and had difficulty getting out of bed. She treated her pain with rest, ice, and ibuprofen. Anderson informed the nurse practitioner she was starting a new job and was worried about her performance due to the back pain. The examination record indicates she had some pain on palpitation along the sides of the spine in the lower thoracic upper lumbar areas. She was given home exercises along with medication for the pain. She was told to follow up if the pain worsened or persisted despite the interventions. No other medical records concerning back pain prior to her employment with Care Initiatives are contained in the agency record.

Anderson alleges she sustained an injury to her low back at work on February 25, 2011. She stated she was lifting a case of juice onto the top shelf in the refrigerator when she felt pain in her lower back that radiated down her legs. She stated she occasionally would get back pain at work on Fridays when she had to put groceries away, but the pain would normally subside by the next day. When this pain did not go away by Monday, she reported the incident to her

supervisor and filled out an incident report.[1] She was sent to Timothy Dykstra, M.D.'s office to be examined.

Anderson was initially seen on February 28, by the physician's assistant, who noted tenderness with palpitation along the lower right lumbar area from the mid-lumbar down to the lower lumbar area. She was assessed as having a lumbar muscle strain and put on work restrictions of no work from floor to waist; alternate sitting, standing, and walking; no lifting, pushing, or pulling over ten pounds; and no climbing stairs or ladders. She was told to use ice and heat for the area, given an injection for pain, and prescribed oral pain medication.

She was seen a week later, on March 7, with the same pain complaints. She was given another injection of medication, prescribed pain medication and muscle relaxers, and assigned to physical therapy. On March 15, Anderson reported to Dr. Dykstra she saw improvement in her symptoms after the first physical therapy appointment. But Anderson returned to Dr. Dykstra on March 22, reporting a flare up after performing her physical therapy with a different provider. She was given another injection of pain medication and referred back to the original therapist. She returned to Dr. Dykstra's office the next day due to the pain she was experiencing. She was again given an injection for the pain, and the provider noted she requested an MRI be done. She returned to the clinic on March 28, noting the pain had calmed down some but she was still experiencing pain radiating down her right leg and her toes would occasionally go numb. She had done no physical therapy since last being seen. Dr. Dykstra

---

[1] Care Initiatives required all work injuries to be reported before the end of the work shift. Because Anderson did not report her injury until the next working day, she was reprimanded with a three-day suspension.

ordered an MRI due to the lack of improvement and again gave her an injection of pain medication.

The MRI was conducted on April 6, 2011, in Des Moines. Anderson reported her brother-in-law drove her to the appointment, but after the appointment, she was in pain and decided not to go back to work. Her brother-in-law wanted to stop at a used clothing store and at Prairie Meadows casino. Because he was her ride, she went along. Surveillance was conducted of Anderson following her MRI. Video footage shows her walking normally outside of the casino, and getting in and out of vehicles with no difficulty. Surveillance video from inside the casino shows her walking normally, moving from one slot machine to another, sitting down, and getting up while gambling for about three hours. On April 5, Anderson filled out her work time card for the following day, asserting she worked a full day on the 6th. She did not correct her time card when she returned to work on the 7th. She also did not report to her supervisor the detours she took on the way home from the appointment.

When she returned to work on April 7, the employer asked her to submit a statement regarding her activities on April 6th. Her statement read,

> I left my house at 7:00 arrived at Iowa ortho at 8:15 was done with MRI at 9:30. Talked to cook to let know back was hurting from the ride wouldn't be in today on 4-6-2011. Went home and done work from home, article, menus also worked on topics for a meeting, had to work on my college course. So even though I wasn't at work because of my back I got a lot done for work. Also work on order for next week.

The employer also documented the answers Anderson gave to questions that were posed to her. She again stated she headed home after the MRI was done at 9:30 and that her pain was bad when she got out of the car. She reported

getting home at 10:30 or 11:00 a.m. and calling the cook at that time to let the cook know she would not be in. She reported she was done working at home at 3:35. She also described the pain she was experiencing after the drive as, "Very uncomfortable. Like pressure on my tailbone. Pain went up my back but I had to lean to one side to sit."

The workers' compensation adjuster conducted a recorded interview with Anderson on April 8 regarding the injury. In that recorded statement, Anderson again stated she went straight home after the MRI and her back was really sore due to the car ride. She reported leaving a message for her co-worker about 10:30 or 11:00. She stated she brought work home to do including working on an article, the menus, and some "schooling stuff." She also denied any prior back injury.

On April 11, Anderson was questioned by the employer and told that the employer knew she had spent three hours at Prairie Meadows after the MRI. For the first time she reported she went to the casino because her brother-in-law wanted to stop there. She admitted she had actually texted, not called, a co-worker to report her absence and that the text message was sent at approximately 1:30 or 2:00, not between 10:30 and 11:00. Anderson was terminated as a result of the fabrication and the falsified time sheet.

On April 12, Anderson saw Dr. Dykstra. He read the MRI as normal except for "a small, shallow degenerative disk protrusion at L5-S1 associated with mild facet osteoarthritic changes." Anderson reported to Dr. Dykstra she was having a significant amount of back pain on the date of the MRI, she had a hard time being able to lay in the MRI, and she had a hard time being able to

walk that day. She reported the pain she experienced that day was similar to the pain she experiences every day. Dr. Dykstra viewed the surveillance videos of Anderson[2] and noted Anderson did not walk in the same manner in his clinic as she did in the videos. Dykstra concluded,

> In regards to her normal MRI and the videotape of her being able to walk and move very normally, especially on a day where she reported that she was having a great deal of back difficulty and, in fact, called in to work that day because she was having so much back pain and yet on videotape was able to walk and get into the vehicle [without] any difficulty whatsoever. Because of this and the inconsistencies that are going on with her reported back symptoms compared to how she can actually move outside the clinic, will go ahead and discharge her at this point. She is at MMI.[3] She has no restrictions.

Following her discharge from employment and release from treatment, Anderson followed up with her primary care provider regarding her low back pain on April 21. She was given medication, but she declined a physical therapy referral due to cost. She again sought treatment on August 31, 2011, complaining of continued back pain. Because she now had insurance coverage, she sought a referral to a specialist. She was referred to Thomas Klein, D.O., for an epidural injection for pain management. That injection was provided by Dr. Klein along with prescribing a different oral pain medication. Anderson also sought out chiropractic treatment in December 2011 for her pain.

Meanwhile, Anderson had an independent medical examination conducted in August 2011 by Sunil Bansal, M.D. Dr. Bansal reviewed the

---

[2] Surveillance was also conducted of Anderson on March 25, 2011, showing her leaving a restaurant and getting into her vehicle without any difficulty. The video showed she was able to twist and lean backwards easily, and she did not appear to be in any discomfort.
[3] MMI stands for maximum medical improvement.

medical records from Dr. Dykstra's office, the physical therapy records, and the MRI report. He had Anderson fill out a patient questionnaire, describe how the injury occurred, detail the treatment provided, outline her current condition, and list the impact the injury had on her activities of daily living. He conducted a physical examination and responded to a list of questions posed by Anderson's attorney.

He agreed with Dr. Dykstra that Anderson was at MMI on April 12, 2011. He did give her an impairment rating of six percent. He opined:

> In my medical opinion, it is within a degree of medical certainty that Ms. Anderson's back pain was caused by her lifting injury on 02/25/2011. Ms. Anderson described a specific traumatic incident on 02/25/2011. In my medical opinion, within a degree of medical certainty Ms. Anderson's back symptoms are related to a progression of her injury she suffered 02/25/2011. She was not complaining of back pain in the days, weeks, months prior to the injury. Moreover, the mechanism of injury (she was lifting some boxes over her head that weighed approximately 30 to 40 pounds and she reports that she has had pain in her back since then) is consistent with the development of her back pathology. Thus from both a chronological and mechanistic standpoint it is clear that her current back pathology is causally related to her injury on 02/25/2011.

Bansal noted Anderson may benefit from a six-week course of physical therapy, anti-inflammatory and pain medication, and/or steroid/epidural injections. He also stated Anderson would need a home exercise program for the rest of her life to help maintain her range of motion. He placed restrictions on her of no lifting greater than thirty pounds and no frequent bending, twisting, squatting, or kneeling.

Bansal also stated he had watched the video surveillance. He stated she did not participate in any rigorous activities on the video but walked around,

sitting a majority of the time, alternating with standing. She did not do any lifting or repetitive bending or stooping. According to him, she did have a slightly antalgic gait early in the video. He also stated she did not do any repetitive lifting, bending, or twisting in the video of her leaving the restaurant, though she did twist one time to grab her seat belt. The videos did not change his opinion regarding her impairment.

Anderson filed her arbitration petition with the workers' compensation commissioner, and her case went to hearing on April 4, 2012. In addition to taking the testimony of Anderson, the deputy commissioner also heard testimony from the business officer manager and the nursing home administrator at Care Initiatives.

The deputy commissioner issued his decision on June 5, 2012, finding the injury arose out of and in the course of her employment and caused an aggravation of Anderson's "pre-existing low back condition." The deputy found Anderson "clearly had a pre-existing back condition" and had sought medical attention for the pain shortly before beginning work for Care Initiatives. However, the deputy credited her testimony that her back condition was under control and did not interfere with her ability to do her job until the date of the injury.[4] He stated Anderson testified the pain was greater than she had experienced before, she was seen by several doctors, a surgical procedure was recommended, and

---

[4] The deputy also noted Anderson had "misled some of her doctors, telling them she had no prior back pain when the record shows she had a history of back complaints not only before this injury, but before working for this employer." The deputy found Anderson's statements about the injury and the pain she experienced following the injury were credible and accepted as truthful. The deputy made this credibility finding "with full awareness of claimant's acknowledgement she was not truthful in reporting the time she returned from her MRI appointment."

Dr. Bansal clearly felt her current back pain was caused by her work injury. The deputy noted there was a discrepancy between Anderson's description of her back pain to her doctors and at the hearing versus her appearance on the videos. While the deputy found her credible that she has back pain from the injury and that pain is worse than she experienced prior to the injury, he also found that Anderson exaggerated her symptoms. "She has back pain, but it is not as severe or disabling as she has described."

The deputy assigned a twenty-five percent industrial disability rating, ordered Care Initiatives to pay the past medical bills submitted by Anderson, and awarded Anderson the cost of her independent medical exam. Care Initiatives appealed the decision to the commissioner, who delegated his authority to render the final agency decision to another deputy commissioner. This appeal decision was issued May 7, 2013, and it affirmed and adopted the arbitration decision as the final agency decision with some additional analysis. The appeal decision acknowledged Anderson "has difficulties with honesty and truthfulness." However, it stated the evidence of a pre-existing back condition was slight consisting of only one treatment note immediately before Anderson began working for Care Initiatives. It was assumed those symptoms abated because Care Initiatives produced no other evidence of spinal complaints or treatment more contemporaneously with the date of the injury. The appeal decision noted the objective findings of pain following the injury were in "a different location than the tenderness found in July 2010" and the findings of all the providers after the injury are remarkably consistent and strongly suggest a persistent change in Anderson's back condition.

Care Initiatives filed a petition in district court for judicial review under Iowa Code chapter 17A (2013). After hearing oral argument on the issues, the district court issued its decision on December 31, 2013. The court deferred to the agency's credibility determinations but found the agency's conclusion that Anderson's current condition was the result of a work injury that aggravated a pre-existing low back condition was not supported by any expert testimony in the record. The court noted Dr. Bansal never stated the current condition was the result of an aggravation of an existing low back condition and in fact Dr. Bansal stated Anderson was not complaining of back pain in the days, weeks, and months prior to the injury. The court stated the aggravation opinion was not found in any other medical records and the deputy likely came to this conclusion in order to reconcile Anderson's prior back treatment and her admission to experiencing back pain routinely on Fridays after leaving work, with the finding of a permanent work-related injury.

The court acknowledged that lay testimony may be used to buttress expert testimony but concluded opinions on medical causation are still within the providence of expert testimony. The court found Dr. Bansal was not fully informed of Anderson's prior complaints of back pain. It also concluded it was not appropriate for the deputy commissioner to come to his own conclusion that Anderson had aggravated a pre-existing condition when there was no expert testimony to support the conclusion. The court also took issue with the appeal decision's statement that the prior back symptoms had abated or were in a different location than the symptoms following the work injury. Because it concluded substantial evidence did not support a finding of medical causation,

the court reversed the agency's decision and remanded the case back to the agency for further proceedings.

Anderson now appeals the district court's decision on judicial review contending the district court erred in finding no substantial evidence to support medical causation due to a lack of expert testimony and due to Anderson giving an incomplete medical history to the doctors.

## II. Scope and Standard of Review.

Our review of a district court's judicial review decision is governed by Iowa Code chapter 17A. *P.D.S.I. v. Peterson*, 685 N.W.2d 627, 632 (Iowa 2004). In rendering its decision on judicial review, the district court acts in an appellate capacity, and on appeal from the district court's decision, we apply the same standards in Iowa Code section 17A.19(10) to determine if we reach the same conclusions as the district court. *Id.* If we do, we affirm the district court's decision; otherwise, we reverse. *Id.*

"Because of the widely varying standards of review, it is 'essential for counsel to search for and pinpoint the precise claim of error on appeal.'" *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). The issue presented to us on appeal, and the dispositive issue for the district court, was whether medical causation was established in this case. "Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Comm. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). Thus, under Iowa Code section 17A.19(10)(f) we will only disturb the commissioner's findings of medical causation if the finding is not supported by substantial evidence. *Id.* at 845. Substantial evidence is

defined in section 17A.19(10)(f)(1) as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance."

We are to judge the factual findings in light of all the relevant evidence in the record, both the evidence that detracts and supports the finding. *Pease*, 807 N.W.2d at 845. Our review is fairly intensive, and we do not rubber stamp the agency's findings. *Id.* However, "evidence is not insubstantial merely because different conclusions may be drawn from the evidence." *Id.* Our task is not to determine whether the evidence supports a different finding but to determine whether substantial evidence supports the finding the agency made. *Id.*

**III. Medical Causation.**

"Medical causation 'is essentially within the domain of expert testimony.'" *Id.* (quoting *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995)). It is the commissioner who must weigh the evidence and measure the credibility of witnesses. *Id.* The weight a commissioner gives to an expert opinion can depend on the "'accuracy of the facts relied upon by the expert and other surrounding circumstances.'" *Id.* (quoting *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 557–58 (Iowa 2010)). But the decision of whether to accept or reject an expert's opinion is for the commissioner, not this court. *Id.* The commissioner considers the expert opinion "*together with all other evidence introduced bearing on the causal connection between the injury and the disability.*" *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998) (emphasis added). If an expert opinion alone is not sufficient to support a finding of

causation, the opinion can be coupled with other testimony, nonexpert in nature, to support a factual finding of causation. *Nicks v. Davenport Produce Co.*, 115 N.W.2d 812, 815 (Iowa 1962). "If the evidence offered is such that reasonable minds may conclude that aggravation of the injury resulted, the commissioner's decision must be upheld." *Id.*

The district court aptly noted the role of the agency was not to supply its own medical causation conclusion in order to reconcile the evidence. *See Dunlavey*, 526 N.W.2d at 853 ("Whether an injury has a direct causal connection with the employment or arose independently thereof is essentially within the domain of expert testimony."). However, the commissioner clearly accepted the opinion of Dr. Bansal on causation in this case. This opinion was based on his clinical evaluation of Anderson and his review of the medical records following the injury. Missing from Dr. Bansal's report is any indication he reviewed the medical record showing Anderson's nine-day, low back pain just two days before Anderson started her employment with Care Initiatives. But Dr. Bansal's report does note Anderson reported to him "her back was often tender after putting the groceries away. On the date of her injury, the order was particularly large for the week. After that day, her pain never went away." This shows he was aware she had back complaints before the discrete injury on February 25, 2011. While it is true he later states that Anderson had not complained of back pain "in the days, weeks, [and] months prior to the injury" and he does not specifically state the February 25, 2011 injury aggravated a pre-existing condition, he was aware of her prior back tenderness.

Anderson admitted at the hearing she did have back pain before the February 25, 2011 injury, but she maintained the problems were not as severe as she was currently experiencing. She explained that while her back would get tender, the pain she now has "is different than normal" because it had "never [gone] down into [her] legs" and "numb[ed] [her] toes." She compared the pain she experienced before she went to work for Care Initiative and the pain she was experiencing after the February 25, 2011 injury. She said the pain she is experiencing now is "way worse" and "it doesn't go away." She stated her prior back pain, after being treated with muscle relaxers, would get better, "[b]ut this hasn't gone away."[5]

The deputy commissioner determined Anderson's testimony at the hearing about how the injury happened and the pain she experienced following the injury was credible and accepted it as truthful. This determination was made despite the obvious and troubling credibility problems with Anderson,[6] and the credibility determination was affirmed on intra-agency appeal.[7] The deputy found based on

---

[5] We agree with the district court that substantial evidence does not support the appeal decision's statement that the pain Anderson experienced prior to employment was in "a different location" than the pain Anderson experienced after the February 25, 2011 work injury. No medical expert makes this comparison in the records, nor does Anderson testify that the pain was in a different location. However, this issue alone does not invalidate the substantial evidence to support the medical causation finding.

[6] The deputy noted the credibility concerns of Care Initiatives stating,

There is a discrepancy between claimant's description of her back pain to her doctors, and to the undersigned at hearing, and her appearance on the videos. Claimant is found to be credible when she states she has back pain from her work injury, and that the pain is worse than that she experienced prior to the injury. But it also appears to be true she has exaggerated her symptoms. She has back pain, but it is not as severe or disabling as she has described.

[7] The appeal decision noted, "That claimant has difficulties with honesty and truthfulness is not disputed. Acknowledgment of that fact does not end the fact finder's task, however. The duty to examine the overall record evidence remains."

evidence outside of Dr. Bansal's report that Anderson did have a pre-existing back condition, for which she sought medical attention prior to employment. It then accepted Anderson's testimony that despite this pre-existing condition, her pain was under control and did not interfere with her ability to do her job for Care Initiatives until after the date of the injury.

When this nonexpert testimony is combined with the expert testimony from Dr. Bansal connecting the symptoms Anderson was experiencing to the February 25, 2011 injury, we conclude substantial evidence supports the agency's factual finding that the injury aggravated a pre-existing condition. *See Anderson v. Oscar Mayer & Co.*, 217 N.W.2d 531, 536 (Iowa 1974) ("[E]xpert testimony that a condition could be causally related to a claimant's employment, although not sufficient alone to support a finding of causal connection, may be coupled with nonexpert testimony tending to show causation and thus be sufficient to sustain an award."). Because the evidence offered, both expert opinions and nonexpert testimony, "is such that reasonable minds may conclude that aggravation of the injury resulted, the commissioner's decision must be upheld." *Nicks*, 115 N.W.2d at 815.

We conclude substantial evidence supports agency's decision finding medical causation, and we reverse the decision of the district court and affirm the decision of the agency.

**DISTRICT COURT DECISION REVERSED; AGENCY DECISION AFFIRMED.**